IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07CV57-V-2
(5:05CR24-1-V)

RICKEY GENE SLADE,           )
                             )
        Petitioner,          )
                             )
        v.                   )           O R D E R
                             )
UNITED STATES OF AMERICA,     )
                             )
        Respondent.          )
_____)

THIS MATTER is before the Court on Petitioner's Motion to
Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255,
filed June 7, 2007 (Doc. No. 1); the Government's Motion for
Summary Judgment, filed August 22, 2007 (Doc. No. 6); and
Petitioner's Motion to Expedite Ruling, filed March 17, 2010
(Doc. No. 11).

To the extent that Petitioner is seeking an expedited ruling
on the ground that the claims raised in his Motion to Vacate
entitle him to relief, his Motion to Expedite Ruling will be
denied.  Furthermore, after careful consideration, for the
reasons stated herein, the Government's Motion for Summary
Judgment will be granted, and Petitioner's Motion to Vacate will
be denied and dismissed.

1

# I. **FACTUAL AND PROCEDURAL HISTORY**

On March 28, 2005, a two-count Bill of Information was filed against Petitioner.  (Case No. 5:05CR24, Doc. No. 1).  Count One charged Petitioner with conspiracy to commit mail and wire fraud (as defined by 18 U.S.C. § 1341, 1343 and 1346), federal program bribery (as defined by 18 U.S.C. § 1952), extortion (as defined by 18 U.S.C. § 1951), bribery through the use of the mail system (as defined by 18 U.S.C. § 1952), and the promotion of money laundering (as defined by 18 U.S.C. § 1956), all in violation of 18 U.S.C. § 371. (Id.).  Count Two charged that Petitioner committed mail fraud and aided and abetted that offense, all in violation of 18 U.S.C. §§ 1341, 1346 and 2.[1]  (Id.).

On March 28, 2005, the parties' filed their negotiated Plea Agreement.  (Id., Doc. No. 2).  Pertinent here, the Agreement memorializes Petitioner's promise to plead guilty to the foregoing charges, and acknowledges his understanding that upon his

---

[1] The gist of the Information's allegations is that Petitioner operated two companies, Business Partners USA, Inc. and Resource Management Services, Inc.  Through a bribery scheme which he orchestrated, Petitioner arranged for and paid substantial sums of money to an alderman in the Town of East Spencer, North Carolina, the Mayor and another elected official in the Town, and to others in exchange for their approval of hundreds of thousands of dollars in business from the Town to Petitioner's companies.  Petitioner funneled some of those payments back to the officials through shell entities controlled by the conspirators.  Once he secured the contracts with the Town, Petitioner received payroll payments from two out-of-state payroll funding companies with whom he also contracted.  Those payments were used to finance a large portion of Petitioner's illegal scheme.  Petitioner's companies failed to perform most of the work for which he was paid.  As a result, substantial losses were incurred by the Town, its tax payers and the two payroll funding companies.

conviction, he would face two statutory maximum terms of five years along with fines and other penalties. (<u>Id</u>. at ¶¶ 1 and 4). The Agreement also contains a waiver provision by which Petitioner agreed to waive his right to challenge his convictions or sentences on any grounds except ineffective assistance of counsel, prosecutorial misconduct, or on the ground that his sentence was calculated in contravention to one of the stipulations in that Agreement. (<u>Id</u>. at ¶ 18).

In addition, the Agreement reflects the parties' stipulations by which they agreed to ask that Petitioner's sentence be calculated on the basis of "the benefit received in return for the payment and the loss to the government from the offense," which was in excess of $400,000; and that his resulting Base Offense Level was 10. (<u>Id</u>. at ¶7(b)). The parties further stipulated that Petitioner's offense level should have been increased by 2 levels for more than one bribe (U.S.S.G. § 2C1.1-(b)(1)), by 14 levels for his having gained more than $400,000 from the conspiracy U.S.S.G. § § 2C1.1(b)(2)(A) and 2B1.1(b)-(1)(H)), by 8 levels because the conspiracy involved an elected official (U.S.S.G. § 2C1.1(b)(2)(B)), by 2 more levels because the conspiracy involved money laundering (U.S.S.G. § 2S1.1(b)(2)-(B)), and by 4 levels because he organized or led a criminal activity involving five or more participants (U.S.S.G. §

3

3B1.1(a)).  (Id. at ¶ 7(a) and (b)).  Last, the Agreement records

Petitioner's understanding that the Court was free to impose

restitution in an amount which differed from the $400,000 figure

that was used to calculate his sentence.  (Id. at ¶ 7(a)).

On April 14, 2005, the Court conducted Petitioner's Plea and

Rule 11 Hearing.  On that occasion, the Court placed Petitioner

under oath and then engaged him in its standard, lengthy colloquy

in order to ensure that his pleas were being intelligently and

freely tendered.  (Id., Doc. 12,  Plea Tr. at 8-9).  Thereafter,

Petitioner's responses to the Court's questions established,

inter alia, that he and counsel had reviewed the charges and had

discussed possible defenses to them, he understood the corre-

sponding penalties, he understood and agreed to the terms of his

plea agreement, including the multiple stipulations and the

waiver provision; and that based upon his stipulations, he and

the Government had agreed that although the Guidelines calcula-

tions likely would yield a sentence in excess of ten years, they

were anticipating a statutory maximum 10-year sentence.  (Plea

Tr. at 10, 12-17).

Petitioner's answers further established that other than the

terms of his plea agreement, no one had made him any promises of

leniency or a light sentence in order to induce his pleas, and no

one had forced, coerced or intimidated him into pleading guilty.

(Plea Tr. at 17-18).  Ultimately, Petitioner told the Court that he was guilty of the subject charges; that counsel's services had been "within satisfaction"; and that he was "pleased with counsel."  (Plea Tr. at 13 and 18).  Counsel also affirmed to the Court that he had reviewed each of the terms of the Plea Agreement with Petitioner, and that Petitioner had understood and agreed to them.  (Plea Tr. at 18-19).  Accordingly, after considering the foregoing, the Magistrate Judge found that the guilty pleas were knowingly and voluntarily made.  (Plea Tr. at 19).

On September 9, 2005, the United States Probation Office prepared a Pre-Sentence Report for the Court.  (Case No. 5:05CR-24-1, Doc. No. 15).  Such Report advised, among other matters, that Petitioner owed a total of $1,526,160.50 in restitution to his victims; that one such victim had been awarded civil judgments totaling more than two million dollars against Petitioner and two of his co-conspirators; that Petitioner had entered into a settlement agreement to pay another victim over $450,000 to resolve their dispute.  (PSR at ¶¶ 34, 101 and 102).  The Report also advised that Petitioner's Guidelines calculations incorporated the relevant provisions in his Plea Agreement; and that in accordance with that Agreement, his Adjusted Offense Level was 37, his Criminal History Category was I, and his corresponding advisory range of imprisonment was 210 to 262 months imprison-

ment.  (PSR at ¶¶ 41, 76, 80 and 107).  Nevertheless, the Report

noted that because the statutory maximum terms of imprisonment

for the two offenses was five years each, Petitioner was facing a

statutory maximum ten-year sentence.  (PSR at ¶ 107).  Neither

party objected to the Report.

On June 20, 2006, the Court held Petitioner's Factual Basis

and Sentencing Hearing, at the outset of which he reiterated his

understanding of the charges and his satisfaction with counsel.

(Case No. 5:05CR24-1, Doc. No. 13, Sentencing Transcript at 2-3).

Without objection from the parties, the Court adopted the Report

as written.  (Sent'g. Tr. at 4).

Thereafter, defense counsel told the Court that Petitioner

had been cooperative from an early stage of the investigation and

was remorseful, and he asked the Court to impose the ten-year

sentence anticipated by the parties.  (Sent'g. Tr. at 4-5).

Petitioner then apologized to the Court for the problems he had

caused.  (Sent'g. Tr. at 5).  Last, counsel for the Government

advised the Court that Petitioner's conduct was an outrage and

constituted only the second time in State history that a town's

governance had to be assumed by the State.  (Sent'g. Tr. at 6).

Nevertheless, counsel for the Government urged the Court to

impose the "generous" ten-year term to which the parties had

agreed.  (Sent'g. Tr. at 7).  Ultimately, the Court sentenced

Petitioner to two consecutive statutory maximum terms of five years imprisonment. (Sent'g. Tr. at 7). Petitioner did not appeal his case.

Instead, Petitioner returned to this Court on the instant Motion to Vacate. (Doc. No. 1). While Petitioner concedes his guilt to the offenses, he first argues that counsel was ineffective for: (1) failing to object to the application of the 2001 version of the Guidelines, instead of the version which was in effect at the time of his sentencing in 2005; (2) failing to object to the overstated calculation of the loss amount; (3) failing to object to the two-level money laundering enhancement under U.S. Sentencing Guidelines § 2S1.1(b)(2)(B); and failing to object to the amount of restitution he was ordered to make. (Id. at 4). Second, Petitioner alleges that counsel was ineffective for failing to argue that there was an "unusual disparity" between his and his co-defendants' sentences. (Id. at 5). Thus, Petitioner seeks to be re-sentenced under the 2006 version of the Guidelines, and to obtain a reduction in the amount of restitution he must pay to his victims. (Id. at 14).

The Government's Response (Doc. No. 7) denies that Petitioner is entitled to any relief. More particularly, the Government contends that Petitioner's sentence was calculated in accordance with the negotiated terms of his Plea Agreement;

therefore, in the absence of establishing the invalidity of that contract, Petitioner has no right to challenge his sentence. (Id. at 11-13). Furthermore, the Government notes that Petitioner neither alleges nor establishes that counsel was ineffective for having allowed him to make those stipulations; that he was sentenced far below the range that was yielded by the stipulations; and that the record amply supports the calculations which were used to determine his advisory sentence and restitution. (Id. at 13-17). The Government also argues that there was no disparity between the sentences imposed on Petitioner and his co-conspirators because his conduct was more egregious than theirs. (Id. at 17-19). Consequently, the Government is seeking a summary judgment of Petitioner's claims on the ground that it is entitled to a judgment as a matter of law. (Doc. No. 6).

Petitioner has replied to the Government's Motion (Doc. No. 10). Such reply challenges the Government's factual recitation and claims the Government was attempting to inflame the Court. (Id. at 1). Further, Petitioner argues that because his Information and Plea Agreement were filed on the same date, that fact proves that counsel was deficient in his obligation to fully explain the complex charges to him before allowing him to enter into the Agreement. (Id. at 3-4).

Petitioner also argues that the restitution calculations improperly relied upon information which should have been excluded, and upon the conclusion that he did not perform any of the work for which he was paid. (Id. at 4-7).

Petitioner claims that the Government's arguments concerning the use of the 2001 Guidelines manual should be rejected because, despite the fact that he received a term which is lower than the one for which he is advocating, he might have received an even lower term had his sentence been calculated under the correct version of the Guidelines. (Id. at 10). Petitioner further argues that the Government's position regarding the money laundering enhancement is baseless because it assumes a non-existent fact, i.e., that he was convicted for money laundering. (Id. at 10-11). Last, Petitioner argues that he should not have been sentenced more harshly than his co-defendants because their positions as Town officials gave them considerable power to authorize the subject transactions. (Id. at 14-15).

For its part, the Court has carefully reviewed the record, the arguments of the parties and the relevant legal precedent. Having done that, the Court concludes that the Government's Motion for Summary Judgment should be granted.

## II. DISCUSSION

### A. Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The movant has the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record before the Court which the movant believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In the event that this burden is met, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n. 3. Thus, the nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a motion for summary judgment, the court must view the evidence and any reasonable inferences arising therefrom in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. Further, the pleadings of a pro se litigant

10

should be construed liberally. <u>Hill v. Braxton</u>, 277 F.3d 701, 707 (4th Cir. 2002). Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." <u>Ricci v. DeStefan</u>, 557 U.S. ___, 129 S.Ct. 2658, 2677 (2009) (<u>quoting Matsushita v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## B. **Allegations of ineffective assistance of counsel**

Ineffective assistance of counsel claims are governed by <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984), in which the Supreme Court held that a petitioner must show that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by such constitutionally deficient representation. In a case involving a guilty plea, no prejudice exists unless "there is a reasonable probability that, but for counsel's errors, [a petitioner] would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985); <u>see also</u> <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). Alternatively, in order to establish pre-judice at sentencing, a petitioner must show that his "sentence would have been more lenient" absent counsel's errors. <u>Royal v. Taylor</u>, 188 F.3d 239, 248-49 (4th Cir. 1999).

In either instance, there is a strong presumption that counsel's conduct was within the wide range of reasonable pro-

fessional assistance.  <u>Strickland</u>, 466 U.S. at 689; <u>Fields v.</u>
<u>Attorney General of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir.1995).
Ultimately, the petitioner bears the burden of proving <u>Strickland</u>
prejudice, and in its absence a "reviewing court need not consi-
der the performance prong."  <u>Fields</u>, 956 F.2d at 1290.

### 1.  Counsel was not deficient for failing to allege a sentencing disparity.

Taking his claims out of turn, Petitioner alleges that coun-
sel was ineffective for failing to argue that there was an "un-
usual disparity" between the sentences that he and his co-
defendants received.  (Doc. No. 1 at 5).  However, Petitioner's
claim is baseless.

It is well settled that an otherwise proper sentence may not
be challenged on the basis of disparity between sentences of co-
defendants.  <u>United States v. Quinn</u>, 359 F. 3d 666, 682 (4th Cir
2004); <u>United States v. Withers</u>, 100 F.3d 1142, 1149 (4th Cir.
1996) (vacating sentence on ground that sentencing disparities
between co-defendants is not a proper basis for downward
departure); <u>and United States v. Davis</u>, 98 F.3d 141, 145 (4th
Cir. 1996) (same).  To be sure, "[a] sentencing court need not
consider the sentence of a co-defendant when imposing sentence."
<u>United States v. Scott</u>, 20 Fed. App'x 147 (Sept. 28, 2001) (un-
published) (<u>citing</u> <u>United States v. Foutz</u>, 865 F.2d 617, 621 (4th

Cir. 1989) ("A sentencing Court simply is not obliged to consider the sentences of co-defendants.") (internal quotation and citation omitted)); and United States v. Miller, 2007 WL 2684844 (D.S.C. Sept. 7, 2007) (same).  See also United States v. Haehle, 277 F.3d 857, 860 (7th Cir. 2000) ("co-defendants have no enforceable right to have sentences that are precisely congruent with one another.  The only thing that matters is that the sentence complies with the guidelines.").  Such principle applies with equal force to co-conspirators who are prosecuted in separate cases.  Thus, Petitioner's claim is legally baseless.

Furthermore, the Court has observed that Petitioner was not similarly situated with the subject co-conspirators.  The alderman (Chris R. Sharpe) was charged in Case No. 5:05CR1 with conspiring to engage in mail and wire fraud, actual mail and wire fraud, and aiding and abetting those offenses.  There were no extortion, bribery or money laundering allegations alleged against Sharpe.

Petitioner's conduct also was more egregious than that of Mayor Kenneth Fox (charged in Case No. 5:05CR-35), the other co-conspirator with whom he compares himself, in that Petitioner: masterminded the scheme, bribed multiple officials of the Town; secured the payroll funding companies who funded his activities and became victims; owned two of the companies that defrauded the

Town; failed to perform most of the work which was promised to the Town; and paid employees of his companies who were not performing such work.

Last, it cannot be overlooked that Petitioner received the sentence to which agreed under oath during his Plea hearing and at sentencing, and that the term he received is below the sentence which would result from the calculations he now proposes. Consequently, Petitioner cannot demonstrate that counsel was deficient for having chosen not to raise a claim of sentencing disparity.

> **2. Petitioner cannot establish either deficient performance or prejudicial result on the basis of the Court's use of the 2001 Sentencing Guidelines Manual, or by its application of the two-level money laundering enhancement.**

Petitioner alleges that counsel was deficient for failing to object to the calculation of his sentence under the 2001 version of the Guidelines, as opposed to the version which was in effect at the time of sentencing in 2006. Notwithstanding the fact that it appears that the latter version would have yielded an offense level that was two points lower than the one used by the Court, Petitioner still is not entitled to any relief on this claim.

That is, even if the Court had used the U.S. Sentencing Guidelines Manual that was in effect in June 2006, such calcula-

tions would not have dictated the imposition of a lower sentence.
Indeed, Petitioner concedes that had the Court used the Manual in
effect in 2006, those calculations would have yielded a total
Offense Level of 35 (instead of 37), and a resulting range of 168
to 210 months.[2]  Nevertheless, Petitioner still would have been
exposed to two statutory maximum five-year terms because "in the
case of multiple counts of conviction, the guidelines instruct
that if the total punishment mandated by the guidelines exceeds
the highest statutory maximum, the district court must impose
consecutive terms of imprisonment to the extent necessary to
achieve the total punishment." U.S. Sentencing Guidelines §
5G1.2(d); United States v. Chase, 296 F.3d 247, 250-51 (4th Cir.
2002) (explaining "stacking" procedure under 5G1.2(d)); United
States v. White, 238 F.3d 537, 543 (4th Cir. 2001) (same).

Furthermore, the Court finds that the two-level money laun-
dering enhancement was proper because the Guidelines direct
sentencing courts to consider all relevant conduct, such as the
harm that was the object of the criminal acts of the defendant.
U.S. Sentencing Guidelines § 1B1.3(a)(3). See also United States

---

[2] Under the Guidelines Manual on which Petitioner relies, he would have
started with a Base Offense Level of 12 instead of 10, but he would have
received an increase of only four not eight levels for having bribed elected
officials.  However, the remaining 22 points of enhancements -- for multiple
bribes, the amount gained from the offense, the offense having involved money
laundering, and his aggravated role -- would have remained unchanged; and the
total Adjusted Offense level would have been two levels lower than was
calculated at sentencing.

v. Barton, 32 F.3d 61, 65 & n.2 (4th Cir. 1994) (explaining that sentencing calculations are to include intended conduct as well as completed conduct).  Because money laundering was one of the objects of Petitioner's conspiracy and his guilty plea encompassed his money laundering activities as alleged in Count One of the Information, the Court would have been free, even in the absence of his stipulation, to conclude that the enhancement was applicable under the preponderance of the evidence standard. United States v. Harvey, 532 F.3d 326, 337 (4th Cir. 2008). Therefore, had counsel raised the instant challenge, such argument would have been flatly rejected.

Even assuming, arguendo, that the Court should have disregarded the parties' stipulation and deleted the money laundering enhancement, Petitioner's resulting Guidelines range of 135 to 168 months still would have exceeded his two five-year statutory maximum terms, thereby requiring the Court to impose the stacked 10-year sentence.  Thus, on this record Petitioner's assertion that the Court might have imposed less than the statutory maximum terms if the 2006 Guidelines Manual had been used is conjecture.

Likewise, Petitioner's assertion that the Plea Agreement is void because it did not identify the version of the Guidelines which was to be used also is baseless because his sentence properly was calculated in accordance with the version of the Guide-

lines to which his stipulations corresponded.  Therefore, Peti-

ioner cannot establish either a deficiency or resulting prejudice

from counsel's handling of these two matters.

>  **3.   Petitioner cannot establish either defi-
>         cient performance or prejudicial result
>         on the basis of the Court's loss calcu-
>         lations or the restitution owed by him**.

By these allegations Petitioner, once again, essentially is

complaining that counsel should have objected to matters to which

he, at least in part, swore that he understood and consented.

Thus, this belated complaint must be viewed with some degree of

skepticism.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977)

("Solemn declarations in open court carry a strong presumption of

verity.").  In any event, Petitioner's claims are baseless.

Petitioner claims that his Pre-Sentence Report substantially

overstated the "loss" to the government by using the aggregate

value of the fraudulent transactions.  More particularly, while

Petitioner concedes that he bribed the public officials in order

to secure the subject contracts, he claims that at all relevant

times, he had the intent and capability to satisfy the require-

ments of those contracts; and that his "failure to satisfy the

requirements of the contract[s] . . . may have been the result of

his lack of business acumen."  Thus, in reliance upon a decision

from the Seventh Circuit Court of Appeals,[3] Petitioner argues that his loss amount should be re-calculated. Petitioner urges the Court to take the value of the checks which were unlawfully written to his companies ($440,000) and reduce it by the value of the services which he "provided (or would have provided in the absence of government intervention)," which calculations will produce "a loss to the government of zero." (Doc. No. 1-1 at 16-17). However, Petitioner's argument fails for at least two important reasons.

First, Petitioner's argument that his loss amount should be reduced by the value of the services he **would** have provided, is based entirely on a case from the Seventh Circuit, which case obviously is not controlling precedent in this Circuit. Further, even if that case were controlling precedent for this Court, Petitioner has neglected to advise the Court of either the value of the services which he provided, or those he intended to provide. Such failure, which is quite telling under the circumstances, is tantamount to Petitioner's inviting the Court to ignore his stipulation and instead rely upon speculation and conjecture to calculate the loss amount. Obviously, the Court must decline this invitation.

Second, and most significantly, the Guidelines and precedent

---

[3] United States v. Schneider, 930 F.2d 555, 558 (7th Cir. 1991).

from this Circuit instruct that in calculating the loss for
bribery offenses like the instant one, the Court is to calculate
the loss amount as the value of the benefit received for that
bribe.  U.S. Sentencing Guidelines § 2C1.1, Application Note 2;
United States v. Harvey, 532 F.3d 326, 339 (4th Cir. 2008)
(noting that under U.S.S.G. § 2C1.1 the "loss" amount can be
based upon the "amount of the benefit received.").  Here,
Petitioner bribed authorities with the Town of East Spencer to
obtain various contracts; he received those contracts; and as a
result, he received numerous payments, including 10 separate
checks from the Town totaling over $421,000.  (5:05CR24, Doc. No.
1 at ¶ 45).  Consequently, the loss amount was properly
calculated and listed in Petitioner's Pre-Sentence Report.  (Pre-
Sentence Report at ¶ 32).

Finally, Petitioner claims that the Court erred in ordering
him to pay restitution on losses which were not properly offset
by the interest and penalties which were included in those
figures.  However, Petitioner's Pre-Sentence Report lists the
actual losses which were caused by his unlawful conduct.  In
particular, concerning the Town of East Spencer, the Report notes
actual losses of $306,648 -- $106.113 was unrecuperated from any
source.  (Pre-Sentence Report at ¶ 35).  The North Carolina
League of Municipalities, which reimbursed the Town for the first

$200,000 of its losses, incurred $205,648 in actual losses from reimbursement costs, and an additional $25,000 in losses for a fidelity bond which it paid as a result of a $25,000 check which was written by the Town's Mayor, one of Petitioner's co-conspirator's, to Petitioner through one of his companies. (Pre-Sentence Report at ¶ 36).

As for the payroll funding companies with which Petitioner contracted, the Report notes that Madison Resource Funding re-ported actual losses of $737,975, and had obtained a civil judg-ent against Petitioner and others in the amount of $2,213,926 -- $737,975 of which was identified as actual damages suffered by that company. (Pre-Sentence Report at ¶ 37). The other payroll company, Resource Funding Group, sustained actual losses in the amount of $451,424 for unpaid invoices which had to be charged back to Petitioner's company.[4] (Pre-Sentence Report at 38). When these figures are added together, they amount to more than $1,534,736, which figure actually is slightly higher than the $1,526,160.50 restitution award for which the Court made Peti-tioner and his co-conspirators jointly and severally liable. Therefore, Petitioner cannot establish either deficient perfor-mance or resulting prejudice in connection with counsel's

---

[4] Ironically, Petitioner actually entered into a settlement agreement to repay this victim a total of $460,000 in satisfaction of his debt. However, that higher figure was not used to calculate the amount of his restitution.

handling of these issues.

### III. <u>CONCLUSION</u>

The Court has considered the claims, the parties' arguments, the record of this matter and the relevant legal precedent, and has concluded that there is no genuine issue of material fact to be resolved. Moreover, the Court has determined that Petitioner has failed to demonstrate an entitlement to relief by any of his claims. Accordingly, the Government's Motion for Summary Judgment will be <u>granted</u> and Petitioner's Motion to Vacate will be <u>denied</u> and <u>dismissed</u>.

### IV. <u>ORDER</u>

**IT IS, THEREFORE, ORDERED THAT:**

1. Petitioner's Motion to Expedite Ruling (Doc. No. 1) is **DENIED;**

2. The Government's Motion for Summary Judgment (Doc. No. 6) is **GRANTED;** and

3. Petitioner's Motion to Vacate (Doc. No. 1)is **DENIED** and **DISMISSED.**

**SO ORDERED.**

Signed: August 20, 2010

Richard L. Voorhees
United States District Judge